May it please the court, my name is Darren Miller and I represent Mr. Lloyd Elk on this appeal. Your honors, today we are asking that this court reverse Mr. Elk's conviction for witness tampering under count eight. Additionally, we're asking for this court to remand for new trial on the remaining counts and alternatively remand for a new sentencing hearing. I'd like to start by discussing the witness tampering count. Our position is the court erred when it denied Mr. Elk's motion for judgment of acquittal for witness tampering. When you look at the witness tampering statute, there is not stated that there is a requirement for reasonable likelihood that at least some communication would have been made to a federal officer. However, that was decided to be an element under Fowler, the U.S. Supreme Court case and all that was a slightly different provision of the witness tampering statute under the Sixth Circuit case of Lobbins and the model instructions for the circuit that is an element and the jury was in fact instructed on the Fowler prong. Your honors, the only threat made to a specific person that related to the first count was directed towards not telling the mom, threatening the minor not to tell the mother. Yes, there is evidence that the defendant also made a threat, don't tell anyone, but when you look in the context of this case, the minor is a five to a seven years old during the time of this abuse. Wouldn't telling the mom be the first step to law enforcement? It could be, but again, I don't think that there is no evidence as far as what steps the defendant... So your argument is not that it has to be a direct contact between seven year old and law enforcement that it could go through the mother? Sure, yes. And when you get to the Fowler prong itself as far as even if you were to assume that there was a report made to any law enforcement officer, there is no proof here beyond just a mere possibility, which isn't enough under Fowler, that this communication would have been made to a federal officer, but for the threat. Why not? Wouldn't it be because of where it took place that it would have been a federal officer? Well, your honor, it took place on the reservation. In fact, there's even evidence that at one point, Mr. Elk himself was a tribal officer. So the reservation has its own set of laws, tribal law enforcement. So naturally the first reasonable likelihood that if a report were to be made, that that would go to the tribal law enforcement officer. What if it did go to the tribal law enforcement and then it went to the federal? Is that too many steps in between the seven year old to mom to tribal to federal? I would say so. And especially here, your honor, there is really no evidence of how likely it is that if a report is made to a tribal officer, that it will make it to the step of the FBI. So was there then evidence that the tribe, the tribal courts could have handled an allegation like this? I thought that it would have automatically gone to the federal investigators. I don't believe that's the case, but I think your honor, what's important here is what the jury heard. What evidence was presented to the jury, and there was no evidence like that presented that these cases automatically go to the FBI. Agent Weber did testify that he's worked on violent crimes in the reservation for eight years, and I believe that he's investigated 131 sex cases. The 131 cases, not even evidence that those are even tribal. Was there cross examination to ask him about his knowledge of the tribal system and how many of these kinds of cases go through a tribal court? I don't believe so, your honor. I don't think that was really the focus of the parties with his testimony. It was more to set up how he learned of SFH's prior abuse. So how do you think then the government should prove that element? What type of evidence would you say, I know it's hard to ask the defense attorney to tell me how the prosecutor should try their case, but what would be sufficient or solidly sufficient? I would say that if Weber, Agent Weber would have testified to exactly the questions you're asking, we have authority over tribal land. It's not just the tribal officers. These more serious types of offenses routinely get reported to us, then I think that would be sufficient, but that evidence was not presented here. And when we're looking at the deficiency of the evidence, since the evidence isn't there, the evidence is deficient. I'd also like to talk about the other issue, the probative value of SFH's testimony about prior abuse. When you look at that evidence, it is highly prejudicial and yes, as a starting point, prior sex acts of abuse of a minor is admissible, but you still have to balance the probative versus the prejudicial effect. What tips this over? Because those rules 413, 414 are very inclusive. Yes. What in particular tips this over to make it the unusual case that it's not admissible? I would say that what tips this over is the dissimilarities in the crime, between the two crimes and specifically, well, two things. One is we're attacking the basic reliability of her statements. That's one thing. But also, even if you take what she said is true, that crime, that prior crime is 15 years old, a single incident, and involved, part of it involved the defendant allegedly coercing two minors to engage in sex acts with each other. That's infusing new evidence that makes the defendant to be just a really bad person. I mean, he's taking, according to her, they're playing hide and seek and Mr. Elk, for whatever reason, didn't lock the door. The minor purportedly told him that they're playing hide and seek. And he gets under the covers and molests her with the door unlocked, knowing that by hide and seek, the goal of the game is seek. Someone's seeking out the victim, looking for her. And then when one of the other children comes and finds them, that he coerced them to kiss and touch each other. So when you look at how highly prejudicial that is, that had an impact here. And just briefly, the court itself noted how the jury was focused on the testimony of SFH. I believe this is a quote from the district court. It was something that the jury considered in their verdict. I thought her testimony did have an impact on the case. It had an impact on the jury's deliberations. So the district court itself recognized that this was evidence that the jury was focused on. I see I have just a little bit of time left. I'd like to reserve. You may. Thank you, Your Honor. May it please the court. My colleague, Mr. Miller. Again, I'm Kirk Alberson. I represent the United States. In this case, we are asking that the judgment and sentence be affirmed. The counts of conviction in this case stem from a pattern of sexual abuse against the child victim. Abuse happened when the victim was between the ages of five and seven at a time when the appellant was in a relationship with the victim's mother. The victim disclosed when she was approximately 15 years old. The appellant had threatened to hurt her and her family members if she ever disclosed the abuse. The appellant's actions led to convictions at trial for aggravated sexual abuse of a child, abuse of sexual contact with a child, and witness tampering. The district court did not err by denying the defense motion for judgment of acquittal and the evidence was sufficient to convict the appellant of witness tampering. The key consideration on appeal is the third element of the crime of witness tampering that deals with a reasonable likelihood that had the victim communicated with a law enforcement officer. At least part of that communication would have been with a federal law enforcement officer. Counsel, this court has never applied the Fowler reasonable likelihood test. Several other circuits have and they have their own little variations of it. Do you recommend which version this court should adopt or do we need to pick one of them? I mean, it appears to me, Your Honor, that the Fowler standard is applicable and appropriate. So that would be the government's recommendation in this case. Yes, Your Honor. The evidence that supports that reasonable likelihood, contrary to what the appellant would have this court believe, appears several points in the record. So the victim testified that the appellant threatened to hurt her, threatened to hurt her mom, threatened to hurt her brother, said he would kill them, that he would take her little brother. She described this happening at her house in Kyle, South Dakota within the Pine Ridge Indian Reservation, which was the same place she lived at the time of the abuse and at the time of the testified about his work investigating a violent crime originating within the Pine Ridge Reservation, including, as Mr. Miller referred to, over a hundred child sex abuse cases. Did he testify about the time period when the threats were taking place, whether he was working there or identifying any other agents that might have been there? I don't think he specifically testified to that, Your Honor. Not that he was working Pine Ridge cases at the time of the threats, no. But so he gave some background, though, about working Pine Ridge, working Indian country cases. The recorded suspect interview came in through Special Agent Weber Exhibit 14. During that interview, the appellant told Special Agent Weber that he had been a police officer in Idaho and that he was accused of similar conduct by the woman who was the 413, 414 victim. He said that he was a tribal police officer between 2005 and 2011, that he had originally been with the Shoshone-Bannock Tribes on the Fort Hall Reservation in Idaho, and that he subsequently moved back to the Pine Ridge Reservation and was a tribal police officer for the Oglala Sioux Tribe there at Pine Ridge. That all came in his statements in Exhibit 14. Special Agent Weber testified about researching that prior allegation that the 413, 414 victim testified about, discovered that that disclosure came out in 2006, and that it was alleged to have happened within the Fort Hall Reservation in Idaho, that that allegation was investigated by the FBI. Special Agent Weber testified about all that. He testified that he discovered that the appellant was interviewed as part of that prior investigation in 2006. The charge of offenses happened between January 2013 and August of 2015. That's the facts that were before the jury in this case. What about the argument or the position that maybe the jury might not quite understand? What's the likelihood it's going to go tribal, even whether it would go state, if you've got a jury that doesn't quite understand that jurisdictional, kind of merry-go-round? Yes, Your Honor. And I think that certainly is a concern, but I think it's less of a concern in this case, given that the evidence was that this defendant has previously been investigated by the FBI. Is that relevant to whether it would be likely to go to the FBI? Like, I understand that he was an officer and he had been investigated. I just wonder if that goes to whether this particular set of allegations would go, would be likely to go to the FBI. Thank you for the question, Judge Kelley. I think it does go to show, I think it, based on the testimony and the evidence that was presented, it certainly gives the jury the ability to infer that this is how these kind of cases are investigated. This defendant has been investigated by the FBI for a similar allegation in the past that occurred prior to the abuse in this case, and certainly prior to him making these threats. As you pointed out, Judge Kelley, where this takes place, where this offense takes place is important. The FBI investigates child sexual abuse cases in Indian country, and the appellant knows that because he's been the subject of an investigation, and he's also been a tribal police officer, both in Fort Hall and in Pine Ridge. Based on that record, in the light most favorable to the verdict, and drawing all reasonable inferences in favor of the verdict, a reasonable jury could have found the defendant guilty of every element of the witness tampering charge, specifically including the reasonable likelihood that had the victim communicated with a law enforcement officer, at least part of that communication would have been with a federal law enforcement officer. I also want to address the district court's admission of the evidence under Rules 413 and 414. As you pointed out, Justice Kelley, Judge Kelley, the 414, really there is a presumption of admissibility. There's not dissimilarities in this case. In fact, the allegations are very similar. The victims were approximately the same age at the time of the alleged abuse. The appellant had access to each of these victims because of his romantic relationships at the time. There is no temporal proximity requirement under 414. There are some cases where evidence of prior assaults from as far back as 20 years ago were admitted at trial. The fact that this is an old allegation, as the appellant claims, is not really a basis to exclude it. Really, their focus seems to be on the nature of the allegation, that the 414 victim described another child being in a room and that child being directed to participate. That goes to the credibility of the allegation, and they claim that's highly prejudicial. I think on the flip side, and they argue this at trial, it also creates the opportunity to argue to the jury, which they did, that that's inherently improbable. The jury was able to hear that. The jury also heard, and it was drawn out on cross-examination, that that allegation was not prosecuted, that it was investigated, that it was vetted, that the appellant denied any wrongdoing, and that it was ultimately not prosecuted. The jury heard all that and was able to assess the credibility of the 414 allegation, decide how much weight to give it, and decide what it tended to show about the charged allegations. To the extent that this is an argument about the credibility of the allegation, that's for the jury to decide the credibility. Based on the record before this court, the district court did not abuse its discretion by admitting that evidence. If there are no further questions for me, I will yield the balance of my time. Thank you. Thank you. Although propensity evidence is admissible in these sex cases, again, still got a balance of probative versus prejudice, and there's good reason, as an old chief noted, that propensity evidence has a very strong tendency to have a jury convict based on the person being a bad crime against SFH was old. That is part of it. It's an old crime. It's one crime. Again, it infused a lot of very prejudicial evidence of abuse of other minors on minors. But also importantly, it's just not reliable. There was no reliability finding before this came in. It's inherently just... So the district court didn't find that it was, make a preponderance finding? The district court did make that finding, Your Honor, but there was no hearing to determine how reliable this evidence was. It looks like I'm out of time. We'd ask that you reverse the witness tampering conviction and reverse and remand on the other counts and alternatively remand for new trial. I'm sorry, for new sentencing hearing. Thank you. Thank you. Thank you.